## Woddrop *v.* Weed, Appellant.

[Marked to be reported.]

| 154 | 307 |
|-----|-----|
| 154 | 322 |
| 154 | 307 |
| 163 | 598 |

*Trusts and trustees—Trust to carry on business.*

Trust property which has been embarked in business is primarily liable to creditors for debt, and will be applied as far as it will go to the liabilities.

*Confession of judgment by the trustee—Preferences—Insolvency.*

A trustee, appointed under a will to carry on the business of the testator, cannot, after both the trust estate and the trustee have become insolvent, confess judgment to a creditor of the trust estate, so as to give such creditor a preference over other creditors in the distribution of the trust property.

Testator devised all of his property to a trustee, in trust for beneficiaries named, with power to "possess, hold and manage the same, and conduct and carry on business, and trade, barter, buy and sell in and for all things that pertain to the said estate and its business or its products, and make such investments and purchases of other property real or personal as he may deem best for the interests of the trust hereby created." The trustee was authorized to sell any part or parts of the estate, and with the proceeds to make such investments, and to do such things and such acts incident to the carrying on of the business as he might deem judicious. The trustee accepted the trust and carried on the business of the testator until both he himself and the trust estate became insolvent. He then confessed judgment to certain of the creditors of the trust estate for the purpose of giving them preference, and the judgments were accepted by the creditors with knowledge that they were for that purpose. *Held*, that the trustee was without power under the circumstances to prefer creditors, and that the judgments were void.

*Equity—Standing of creditors to contest judgment.*

In such a case the other creditors have a standing in equity to compel the trustee and the preferred creditors to account.

*Testamentary trust—Delegation of power by trustee—Assignment for benefit of creditors.*

A trustee, appointed under a will to carry on the business of testator, cannot make an assignment for the benefit of creditors, in the absence of express authority for that purpose given in the will.

Argued March 16, 1893. Appeal, No. 343, Jan. T., 1893, by defendants, Mills B. Weed et al., from decree of C. P. Lycoming Co., Sept. T., 1891, No. 2, in equity, in favor of plaintiffs, C. William Woddrop et al., dismissing exceptions to master's report. Before GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Creditors' bill for account, etc., by testamentary trustee.

The bill averred that Mills B. Weed, trustee, under the will of Frederick R. Weed, deceased, to carry on the business of the testator, did, at a time when he himself was insolvent, and when the trust estate was insolvent, confess judgment to the First National Bank of Owego and to J. J. Crocker, trustee, certain creditors of the trust estate, in order to give them a preference, and had subsequently made a general assignment for the benefit of creditors, as trustee, to J. C. Hill and J. J. Crocker; that execution had been issued under the confessed judgments, and a levy made. The bill prayed: (1) That the levy under the writs of fi. fa. be stricken off; (2) that the judgments so confessed be declared to have no preference to plaintiffs therein; (3) that the deed of assignment be declared void; (4) that the assignees be required to reconvey to the legal representatives of the estate of F. R. Weed, deceased, all property conveyed to them thereby, and to deliver to said legal representatives all choses in action and property of every kind that may have come into their possession or control; (5) that said assignees be enjoined, preliminary until hearing, and perpetually thereafter, from selling, conveying, or in anywise disposing of any of the real or personal property which may have come into their possession or control, and from paying out any moneys to any person whomsoever; (6) that said assignee be required to account to the legal representatives of said estate for all moneys paid to or collected by them under said assignment; (7) further relief, etc.

The case was referred to T. M. B. Hicks, Esq., as master, who reported the facts as stated in the opinion of the Supreme Court. The master recommended a decree in favor of plaintiffs. Exceptions to the master's report were overruled, and a decree entered in accordance with the prayers of the bill, in an opinion by METZGER, P. J.

*Errors assigned* were dismissal of exceptions and entry of decree, quoting them.

*W. D. Crocker, Rodney A. Mercur, Addison Candor, C. Larue Munson* and *J. Clinton Hill* with him, for appellant.— Neither the will nor any statute gives to creditors the right to

cite a testamentary trustee to file an account for the purpose of enforcing payment of their claims against him, or of any other manner invoking the jurisdiction of the orphans' court for that purpose: Shore's Est., 10 W. N. 572; Warner's Est., 2 Whart. 295; Metts's Ap., 1 Whart. 7; Hammett's Ap., 83 Pa. 392; McCandless' Est., 61 Pa. 9; Yorks's Ap., 110 Pa. 74.

The jurisdiction of the orphans' court is exclusive over executors and administrators only: Hammett's Ap., 83 Pa. 392; Innes' Est., 4 Whart. 179; Wapple's Ap., 74 Pa. 100. But where the testamentary trustees are appointed nominatim the common pleas has concurrent jurisdiction with the orphans' court: Act of June 14, 1836, § 15; Johnson's Ap., 9 Pa. 421; Brown's Ap., 12 Pa. 333; Seibert's Ap., 19 Pa. 49.

The fact that, when a judgment is obtained, or a mortgage or judgment given amicably, the estate is insolvent, and the rights of other creditors may be affected by having the fund for payment of their claims diminished, cannot affect the right or lien of such judgment or mortgage creditor, unless his judgment or mortgage was given with fraudulent intent: Woods v. Irwin, 141 Pa. 293; Clark v. Douglass, 62 Pa. 408.

At common law, executors and administrators, although in a sense trustees for the creditors of their decedent, had the right to prefer one creditor to another of equal rank; or even to retain out of the assets to pay their own claim in preference to other creditors of equal rank: Lyttleton v. Cross, 3 B. & C. 317; 2 Williams on Executors, 6 Am. ed., c. 2.

The insolvency of the estate did not, and could not, operate to fix the rights of creditors as between themselves, and entitle them to demand a marshaling of the assets: Baskins's Ap., 34 Pa. 272; Mason v. Pomeroy, 151 Mass. 164; Cumming's Ap., 25 Pa. 269.

*Seth T. McCormick, Henry C. McCormick* and *Henry W. Watson* with him, for appellees.—A trustee created by will, such as Mills B. Weed, could not, under the circumstances surrounding this case, prefer one or more of the creditors of the trust estate to the exclusion of the others: Garland's Case, 10 Vesey, Jr. 110; Mathews v. Stephenson, 6 Pa. 496; Baskins's Ap., 34 Pa. 272; Brown's Ap., 12 Pa. 333; Wimmer's Ap., 1 Whart. 96; Culbertson's Ap., 76 Pa. 145; Mason v.

Pomeroy, 151 Mass. 164; Levan's Ap., 112 Pa. 294; Brightly's Equity, §§ 676-7; 1 Dan. Ch. Pl. & Pr. 726; 1 Chitty's Pl. 614; Pusey v. Wright, 31 Pa. 387; Erie & Pittsburgh's R. R. Co.'s Ap., 3 Penny. 164.

The trustee had not the power to make a general assignment of the trust estate for benefit of creditors: Hill on Trustees, 4th Am. ed. 175; Perry on Trusts, §§ 287, 408; 7 Am. & Eng. Enc. of Law, pp. 300, 301.

OPINION BY MR. JUSTICE THOMPSON, April 17, 1893:

F. R. Weed, who died April 1st, 1882, by his will devised all his property real and personal and mixed whatsoever the same may be and wheresoever the same may be to his brother Mills B. Weed in trust nevertheless for the following uses and purposes, to wit: That he shall possess, hold and manage the same and conduct, carry on the business and trade, barter and buy and sell and do all things that may appertain to said estate, its business or its products, and make such investments and purchases for the property real and personal as he may deem for the best interests of the property. If he shall deem it judicious to do so he is authorized to make sale of any part or parts of the estate hereby devised and give title therefor, and with proceeds of such sale he is authorized to make such investments, and generally to do such acts and things incident to the carrying on of the business for the benefit of the cestui que trusts hereinafter named as he may deem judicious. That said Mills B. Weed in consideration of the services rendered by him shall receive a reasonable support out of the trust funds for personal services rendered. The trust was to continue ·during life of Mills B. Weed. After deducting all the expenses, he was directed to pay out of the net income annually to the testator's wife one fourth, the wife of Mills B. Weed one fourth, to his son one fourth, and one fourth to the education of the children of Mills B. Weed and Mary Weed.

At the time of the death of F. R. Weed he was engaged in conducting a banking business as F. R. Weed & Company, a lumber business in firm name of Weed & Allen, and also did business at Trout Run, having a country store there. Mills B. Weed, as trustee·of the estate thus devised, continued these several branches of business in which the testator had been

engaged. While thus conducting these businesses the trust estate became insolvent and the master finds as a fact that Mills B. Weed was also insolvent. While the estate was thus insolvent Mills B. Weed, as trustee, and in the name of Weed & Allen, on March 16, 1891, executed and delivered to J. J. Croker in trust a promissory note for $76,758.71 with a warrant of attorney to confess judgment thereon, and on March 17, 1891, judgment was entered thereon. On March 16, 1891, said Weed as trustee and in the name of Weed & Allen executed and delivered to the First National Bank of Owega, New York, another promissory note for $25,000, with warrant of attorney to confess judgment, and on March 17, 1891, judgment was entered thereon. On March 17, 1891, executions were issued on these judgments. On March 19, 1891, said trustee executed and delivered to J. J. Crocker and J. Clinton Hill a deed of assignment of all property of said estate in trust to pay the creditors.

Two questions arise in this case, whether the said trustee, the estate being insolvent, could by confessing the judgments in question enable the persons to whom they were given to obtain a preference over other creditors of the trust estate, and whether the trustee had any authority to execute the deed of assignment of the trust estate for the benefit of its creditors.

The business of F. R. Weed deceased was continued by Weed as trustee for the estate. The character and nature of the different kinds of business required large credits. The basis of a banking business is necessarily credit. That of the lumbering business by reason of the magnitude of the operations demands a resort to credit, and that of a large country store almost by necessity requires extensive credit. These credits thus required in the business were obtained by the trustee in conducting the same, and the creditors, upon the faith of the trust estate, gave them. The trustee so dealt with them for the trust estate, and his authority to do so was contained in the will creating the trust. He was authorized by it to conduct and carry on business and trade, barter, buy and sell in and for all things that pertain to said estate, its business or its products. As a trustee he had complete power to deal with the trust estate to any extent that he might deem for its best interests in obtaining credit for the conduct of the business. Occupying this

position of trust and dealing with the trust estate, the creditors dealt with him. While the wife and the others are named in the will as cestui que trusts, there came into existence, by reason of the power of the trustee, the estate embarked in trade, the credit given the trust estate in the business, a class of persons whom equity in case of insolvency will protect by the preservation of the trust property from destruction or dissipation. This equity has its foundation in the estate which is embarked in business and to which credit has been given. "Trust property which has been embarked in trade is primarily liable to creditors for debt, and will be applied as far as it will go to the liabilities:" Hill on Trustees, 4th edition, star page 443. In re Garland, 10 Vesey, Jr., 110, it was said by Lond Chancellor ELDON: "Next it is admitted they (the creditors) have the whole fund that is embarked in the trade, and in addition they have the personal responsibility of the individual with whom they deal, the only security in ordinary transactions of debtor and creditor. They have something very like a lien upon the estate embarked in trade."

In Matthews v. Stephenson, 6 Pa. 496, it was said: "We cannot doubt but that it was the intention of the grantor to give the power of contracting debts upon the credit of the fund or property. Such power would seem to be necessarily implied in a general power to carry on a store. More especially as he ex presses the most unbounded confidence in his son, who was the trustee, and that he would conduct the whole business for the benefit of the beneficiaries and of the objects of the grantor's bounty. It would be monstrous to hold that the trustee and the agent himself, altogether without property as appears from the deed of trust, should be allowed to carry on business on the strength of the trust property, according to the custom of the country, and then permit him or any one else to allege that the trust property was not liable because he was not expressly authorized to contract debts in so many words. The stock of the beneficiaries was repaired and renewed by these debts contracted; they got the benefit of them and the trust property ought to be liable." In Baskins' Ap., 34 Pa. 272, it was said: "As the trust funds in his hands are by the term of the deed charged with the remaining debts incurred by Thomas Stephenson under the power granted to him by that instrument, Mr. Baskins

is a trustee and liable to account as such to the creditors of the trust. But it is in his capacity as trustee that he is to account, and therefore the proper place to file and settle his account is in the court of common pleas and not in the orphans' court."

The trust estate is primarily liable for the debts contracted upon the faith of it. As it is insolvent, and the trustee, as the master finds, is also insolvent, he became a trustee for its creditors. As such he was bound to protect all their rights and preserve the trust estate for distribution among them according 'to their respective rights, and had no right to give a preference to any of them. The estate being insolvent all of its creditors stood upon an equality, and a creditor who has received a judgment for the purpose of liquidating the amount of his claim has no right to enforce said judgment by execution to the destruction of the estate or the rights of other creditors. The master found " that in the confession of these judgments that the trustee intended that J. J. Crocker and the First National bank of Owega should be preferred out of the assets of the estate in his hands as trustee, and that they accepted such judgments with the intent to obtain such preferences, and by issuing executions on same and making a levy upon the personal property to the exclusion of the appellee and other persons interested."

The purpose of the trust was to conduct and carry on the business, and by the insolvency of the estate this purpose .was at an end. Such being the case, the duty of the trustee was to file his account and terminate the trust by the distribution of its assets among the creditors pro rata. Instead of doing this, he, after the doors had closed upon the business, with intent to prefer and transfer a large portion of said estate to Crocker and the bank, confessed these judgments to them and they accepted them with the intent to accomplish that purpose. In violation of a duty cast upon him, it was an attempt on his part and that of these creditors to secure a part of the trust estate to the exclusion of others who stood upon an equality with them, and whose rights were the same. It is not the case of a creditor dealing with a solvent estate and with the right to sue and obtain judgment. It is not the case of a trustee of a solvent estate confessing judgment for a debt due by it. It is not the case of a simple contractual relation with rights that spring from it, but it is an effort of certain creditors, and of a trustee himself insolvent,

with a trust estate insolvent, for which debts have been contracted in its business and upon its credit, and whose creditors all stand upon an equality, to destroy that equality by delivering over a considerable part of the estate to such creditors. He was to conduct the business and had no power thus to prefer, as the estate was insolvent. His duty was to prevent any preference among the creditors and to keep the estate intact for distribution among the creditors. Such an attempt on the part of a trustee, because violative of his duties with regard to the estate and of the rights of its creditors and intended to dissipate the trust estate by a preference, should move a court of equity to prevent its consummation, where a bill, as in this case, has been filed by a creditor and on behalf of all others in interest.

It is said that only the cestui que trusts named in the will can compel the trustee to file his account, that the creditors cannot do so, and therefore their only remedy is by action at law and by proceedings upon judgments obtained in such action, and that the trustee may waive adverse proceedings and give creditors the preference, which they could obtain by an action at law. In Brown's Appeal, 12 Pa. 335, the jurisdiction of the orphan's court is considered in regard to testamentary trusts given nominatim, and the conclusion was reached that both the common pleas court and the orphans' court have concurrent jurisdiction. The creditors who thus occupy the relation as shown to the trust estate can compel the trustee to file his account. It is claimed that as the relation between the creditors and the trustee is a contractual one, the trustee had a right to give mortgages or confess judgments. Where the estate however has become insolvent and the rights of creditors have intervened and the estate should be held intact for distribution, a trustee has no right to confess judgments with intent to prefer creditors by giving them the right to issue execution and sell the property : Mason v. Pomeroy, 151 Mass. 164.

On March 19, 1891, Mills B. Weed, as trustee, made a deed of assignment to J. J. Crocker and J. Clinton Hill, conveying all the real and personal property of the trust estate to them. In this deed of assignment it is provided that " they shall sell and dispose of the lands, tenements, goods and chattels of the said trust estate of the said Mills B. Weed, trustee, collect and recover all outstanding claims and debts of him the said Mills

B. Weed, trustee, due, and with the money arising therefrom, and after deducting reasonable costs, shall pay the creditors their respective demands if there be sufficient assets to satisfy the whole and if there shall not be sufficient to satisfy the whole of the just demands of the creditors in full then pro rata according to the amount of their respective demands without preference as between individuals, and should any part of the said trust property remain after complying with the terms aforesaid then said J. J. Crocker and J. Clinton Hill shall deliver over and reconvey the same to the said trustee if he be living."

The duty of the trustee was to conduct and manage the business. It was intrusted to him because of the confidence reposed in him by his brother, and the will did not authorize him to delegate the duty to anybody else. " The duty and power of a trustee cannot be delegated to others unless there is express authority for that purpose given in the instrument creating the trust. It follows therefore that a power to appoint a new trustee can seldom or never exist except in express trusts created by deed or will. The person who creates the trust may make it in whatever form he pleases, he may therefore determine in what event and upon what condition the original trustee may retire and new trustees he substituted." Perry on Trusts, § 287. The estate being insolvent and by reason thereof the trust about to be terminated, this deed was an attempt to transfer to Crocker and Hill all the duties that were cast upon the trustee by the will while at the same time it continues the trust. He had no authority to do so by it. It is no answer to say that this is but a method of payment and that no person but the cestui que trusts named in the will could object. The relation existing between the trust estate and the creditors places them in a position to object.

It may be said in conclusion that upon every principle of equity this trust estate should be held intact for the benefit of all its creditors, according to their respective rights, and free from any preferences.

Decree affirmed and appeal dismissed at cost of appellants.

Mr. Justice Mitchell dissents.

See also the next case.