## Public Liability Insurance for Fiduciaries

UMSTED, Special Deputy Attorney General, November 20, 1942.—We are in receipt of your recent request for an opinion concerning the maintenance of liability insurance on property held in trust. Specifically you inquire as follows:

1. May a fiduciary charge against the funds of a particular estate, administered by it 'premiums for public liability insurance purchased in respect to real estate owned by such estate?

2. May the Secretary of Banking, as receiver of a fiduciary institution, charge against the funds of a particular estate administered by him as receiver of such institution premiums for public liability insurance purchased in respect to real estate owned by such, estate?

To answer these questions we must first ascertain upon whom falls the liability for torts committed by a trustee in the course of administration of the trust.

The rule is set forth in the A. L. I. Restatement of Trusts (1935), §265, as follows:

"The trustee as holder of the title to the trust property is subject to personal liability to third persons, at least to the extent to which the trust estate is sufficient to indemnify him."

. This rule is qualified as follows:

"It is not intended to express any opinion on the question whether the trustee is personally liable as holder of the title to the trust property where the trust estate is insufficient to indemnify him, and where the trustee was in no way at fault in incurring the liability and was not responsible for the insufficiency of the estate to indemnify him."

Pennsylvania decisions are cited in A. L. I. Restatement of Trusts, Pa. Anno. (1939), §265, to support the foregoing proposition as follows: Fidelity-Philadelphia Trust Co. v. Bergson (No. 1), 328 Pa. 545 (1938); The Pennsylvania Co., etc., v. Bergson, 307 Pa. 44 (1932); Bunting v. North Philadelphia Trust

Co. et al., 120 Pa. Superior Ct. 419 (1936) ; Preston Retreat v. Potter, 120 Pa. Superior Ct. 82 (1935).

These cases have to do with the liability of the registered owner for local taxes on real estate, but in principle they do support the Restatement rule.

In Prager v. Gordon (No. 1), 78 Pa. Superior Ct. 76, 79 (1921), a case involving injury to a tenant on real estate held in a trust, Judge Trexler writes:

" 'Was the trustee individually liable for negligence in his representative capacity?' It seems to be well settled that the personal representative is liable in his individual liability for torts committed by him. For any cause of action arising through the negligence of an executor or trustee in managing an estate such executor or trustee is personally liable, and the action must be brought against him in his individual capacity."

We think it free from doubt that there is a personal liability on a trustee for torts committed in the administration of the trust. Whether upon a recovery he may reimburse himself from trust assets or pay damages out of trust assets is another question. Here we can concede the proposition that where a trustee is personally guilty of tort in the administration of the trust he cannot shift the response in damages from himself to the estate. However, we still have the situation where the trustee may be held liable for the torts of his agents, servants, and employes under the doctrine of respondeat superior. In such cases may he pay a judgment from trust assets or, having himself paid, recoup from trust assets?

On this subject the A. L. I. Restatement of Trusts (1935), §247, comm. (a), states as follows:

"a. *Reimbursement and exoneration.* The trustee is personally liable to third persons for torts committed by him in the course of the administration of the trust (see §264). If the liability was incurred in the proper administration of the trust and the trustee was not

personally at fault in incurring the liability, he is entitled to indemnity out of the trust estate. If he has discharged the liability out of his individual property, he is entitled to reimbursement out of the trust estate; if he has not discharged the liability, he is entitled to exoneration out of the trust estate, that is he can properly use trust property in discharging the liability."

We find a dearth of authority in Pennsylvania for the above-quoted proposition, and we find no Pennsylvania cases which hold or infer that a trustee *may not* reimburse himself from trust assets where the trustee incurred liability for a tort of which he was personally not guilty. In summary, therefore, we may say that the situation which obtains is that a trust estate may very well be held ultimately liable to loss for tort where the trustee was not personally at fault, but is called upon to answer for the wrongful acts of his agents or others in the administration of the trust. We think it reasonable to assume that in the first expression on the subject our Pennsylvania courts may follow the Restatement rule, supra.

The wise and cautious trustee will protect his trust against such possibility of loss. And if he does so by obtaining liability insurance the cost of it should fall upon the trust estate.

In an interesting article on this subject, to be found in the July 1942 edition of Trusts and Estates, The Journal of Capital Management, published by Fiduciary Publishers, Inc., Henry Pirtle, trust officer of the Cleveland Trust Company, discusses the situation of the law and concludes:

"From the foregoing it would seem that a trust company could be justly criticized for not procuring public liability insurance in a reasonable amount for protection against judgments for damages in tort recovered by third persons, because in some states at least the trust estate as well as the trustee may be held liable for his torts; that even where the trustee alone is liable to suit, he may well be entitled to reimbursement

from the trust and therefore the insurance should be taken for the protection of the trust. The insurance being for the benefit of the trust estate, the premium cost is a proper expense to be paid from the trust estate. See Prudential Ins. Co. v. Land Estates, Inc., 31 Fed. Supp. 845; In re Stewart's Will (1939), 9 N. Y. Supp. (2d) 315; In re Lathers' Will, [(1930) 243 N. Y. Supp. 366]."

We adopt the reasoning set forth above for it may well become the law of Pennsylvania. A trustee is not only without fault when he obtains insurance against the possibility of loss, as above outlined, but he has a distinct obligation to obtain such insurance and charge the trust funds under his administration with the premium.

In purchasing liability insurance the trustee must act with reason and prudence. He may not procure insurance excessive in amount, nor should he obtain an inadequate coverage. In any event, the particular facts and circumstances in each trust should be taken into consideration. In the case of protection against liability arising through the administration of real estate in a trust it would seem advisable for the trustee to carry a blanket policy if he is administering more than one trust and charge the premium proportionately.

What is said hereinbefore applies with particular force to the trust institutions under your supervision and it would seem that your examiners would have no occasion to criticize any institution of this character for expending funds of any trust estate under its management for premiums on insurance to protect the assets of the estate from what is commonly referred to as public liability.

Your second question treats with the responsibility of trust estates under the management of the Secretary of Banking for the payment of liability insurance premiums. This presents a little different situation

than the one heretofore discussed, although the secretary in possession of a trust institution is subject to the same liability as would be the corporation in the performance of its fiduciary functions.

Section 802 of the Department of Banking Code of May 15, 1933, P. L. 565, 71 PS §733 et seq., reads in part as follows:

"B. The secretary, when in possession of an institution as receiver, shall have all the rights, powers, and *duties* which such institution had in its fiduciary capacity. He shall have title to all the assets . . . In pursuance of this power, the secretary may institute any action at law or in equity, or execute and sign any written instruments, which the institution itself could have instituted, executed, or signed." (Italics supplied.)

Furthermore, the secretary, under the foregoing section of the Department of Banking Code, has the same right to purchase liability insurance as had the defunct fiduciary.

A trustee usually is one who serves by reason of his appointment and his acceptance of the trust. Such fiduciary need never serve against his will. This is forcibly demonstrated by a not uncommon situation. A, the owner of unproductive real estate burdened with excessive taxes, would search far and wide to find a trustee willing to accept that trust, the corpus of which would comprise solely that real estate.

On the other hand, the Secretary of Banking does not have the same privilege of rejecting the trust accorded the ordinary fiduciary. When a trust company comes into his hands he is obliged under the law to take that trust company's place as fiduciary for the trusts which the company is managing. He may not refuse any of them but must accept the bad along with the good. In fact, what actually happens is that substituted trustees are soon found in the good estates. The unprofitable and unproductive estates remain with

the Secretary of Banking. But it is just in such unproductive estates with dilapidated buildings that liability for tort is most prone to arise.

We think as heretofore said that the ordinary trustee has the right to insure against public liability for tort committed by his agents and others and charge the premiums to the trust estate or estates under his management. Obviously then the Secretary of Banking, who serves as fiduciary from the cessation of activities of the defunct fiduciary until the appointment of a substituted fiduciary, and cannot refuse so to serve, has even more reason to protect himself and the trusts from a response in damages to torts, as above outlined.

In view of the foregoing, it is our opinion and you are accordingly advised:

1. That a fiduciary may charge against the funds of any estate under his management premiums for public liability insurance purchased in respect to real estate held in such trust.

2. The Secretary of Banking, as receiver of a fiduciary institution, may charge the particular estates under his administration with insurance premiums for public liability insurance purchased in respect to real estate held in each such trust.